ALBANY,
Feb. 1824.

*Ex parte* BAILY.

I. SEELYE, moved for a mandamus to the Judges of the Court of Common Pleas of Otsego county, commanding them to grant a new trial in a cause in that court between Baily plaintiff, and Stocker defendant. The action was slander for charging the plaintiff with being a thief. On the trial, witnesses were sworn for the plaintiff, but none for the defendant. P. T. testified that he heard the defendant say to the plaintiff, " You will not only lie, but steal." C. B. swore that he heard a part of the same conversation : the plaintiff asked the defendant if he had not said, that he the plaintiff was a thief, and he could prove it ? that the defendant did not reply. The plaintiff then repeated the inquiry, and the defendant then said, " You will steal." J. F. swore, that the defendant speaking to him of the same conversation, said that he and the plaintiff had had some dispute ; the plaintiff called him a liar, and he said to the plaintiff, " You will steal," or, " You have stolen ;" and he told the witness further, that the words were, " that the plaintiff was a thief or would steal," or something like that. He further told this witness, that at the time he made this charge against the plaintiff, he did not say he could prove it ; and he thought that would be a defence to the action. B. F. swore, that he heard the conversation alluded to by the first and second witnesses, but did not remember the words distinctly. They were very insulting and abusive, and he did not hear the plaintiff use any improper language to the de-

*It seems,* that where a judge omits to notice material testimony in his charge to the jury, this is not error, unless the party call his attention to it, and request him to give it in charge.

The remedy for refusing to comply with such request is not by mandamus to compel a new trial, though the refusal be by a judge of the C. P. (who should refuse to grant a new trial) but by a bill of exceptions, and a writ of error.

In slander, where there is the least room for criticism on the import of the words, this should be determined by the jury, whose decision is conclusive.

Slander is in the nature of a penal action, and though the jury find for the defendant against the weight of evidence, a new trial will not be granted.

Though a verdict in the C. P. be against the weight of evidence, and that court, on motion refuse a new trial, there being a counsellor at law on the bench, yet this court will not interfere by mandamus.

Because the granting a new trial rests in discretion.

Though this court might interfere by mandamus in an extreme case of this nature, as where there is no room for doubt, yet such remedy should be exercised very sparingly.

A court will, in their discretion, sometimes deny a new trial, though the verdict be plainly against law, as if the nature of the controversy be trifling, &c.

ALBANY,
Feb. 1824.

Ex parte
Baily.

fendant. G. W. heard the same conversation ; did not re- member the words, but understood the defendant to have made a general charge of stealing against the plaintiff. J W. and W. H. proved that the defendant was a man of considerable property : and on J. W. being cross-examined, he said he served the writ on the defendant; the plaintiff told him that the defendant had said to him, "You will steal, won't you ?" but did not say that this was the only charge the defendant had made against him.

The defendant's counsel moved for a nonsuit on the ground that none of the words proved were actionable. His Honor the First Judge, being of the degree of counsellor at law, was of opinion, that the motion should be granted, and assigned his reasons at length ; but he was overruled by the other two Judges on the bench, who decided that the cause should go to the jury, whose province it was to give a con- struction to the words.

The First Judge then charged the jury that altho' his indi- vidual opinion was unaltered that the plaintiff ought to have been nonsuited, yet a majority of the Court thought other- wise, and it was the opinion of the other members of the Court that he was about to deliver to them. He frankly and candidly invited them to consider it as the opinion of the Court ; and that he might very probably be mistaken, and the other members of the Court be right. He then stated the following propositions : 1. It is the province of the jury to construe the words, and determine their meaning ; and if they should find that the word *will*, as used, meant that the plaintiff *would be* guilty of stealing hereafter, then they ought to find for the defendant. 2. If they should find that the word *will*, as used, meant that the plaintiff had committed theft, then the plaintiff would be entitled to a verdict. The jury found a verdict for the defendant. A motion was afterwards made for a new trial, but denied.

*Seelye* remarked, that the words proved are in tnem- selves actionable. They amount to a direct charge of theft, and it should not have been left to the jury to determine their actionable quality. This was a question of law for the Court to decide.

But if the actionable quality of the words was to be determined by the jury, we contend it was not properly left to them by the Court. The charge related to 'the word *will*, and referred solely to the testimony of P. T. who swore that he heard the defendant say, "You *will* not only lie, but steal." At any rate, the whole case was put to the jury upon the testimony of P. T. & C. B. The testimony of the other witnesses was overlooked. G. W. understood the defendant to make a general charge of stealing. This was actionable. (*Ney* v. *Otis*, 8 Mass. Rep. 122; *Hoyle* v. *Young*, 1 Wash. Rep. 152; *Fowle* v. *Robbins*, 12 Mass. Rep. 500, per Jackson, J.; *Peake* v. *Oldham*, Cowp. 275; *Oldham* v. *Peake*, W. Bl. Rep. 959; *Woolnoth* v. *Meadows*, 2 East, 453.) The words as stated by J. F. were, that the plaintiff *would steal or had stole*. All this evidence aside from that of P. T. & C. B. was laid entirely out of the case, both by the Court and jury. It should have been submitted upon the whole evidence, whether the charge of theft was intended. The case was suffered to turn entirely upon the construction of the word *will*.

The jury should have been charged to construe the words, as they would have been understood by the by-standers: and that if they believed they would have been understood to charge the plaintiff with theft, they should find for him.

*S. Starkweather*, contra. There were no actionable words proved; and as all the evidence referred to the same time and place, if any one set of words, as proved by any witness, was not actionable, the Court will intend, after trial, that the words found by the jury to have been spoken, were not actionable. In slander and the like actions, the Court will not grant a new trial, where the merits have been submitted to the jury. An acquittal is conclusive, as in case of a criminal prosecution. If words are not in themselves actionable, the manner of speaking them is to control their meaning. The jury have passed upon this point, and their finding is conclusive. They have, in the language of the charge, "construed the words, and determined their meaning," as they had a right to do.

But th s Court have no jurisdiction over the subject mat ter of the motion. The right to a new trial rested wholly in the discretion of the Judges who tried the cause. The appropriate and only remedy was by bill of exceptions to the opinion of the Court, and a writ of error.

*Curia.* The motion for a nonsuit was properly overruled. The Judge then proceeded to charge the jury, that the question for them to determine was how the words were to be understood; and the principal subject of complaint is, that he confined his notice solely to the words in proof which were grammatically prospective, " you *will* steal," without expressly submitting other sets of words, which it is insisted were established by the proof. He told the jury, that it was for them to say, whether the words were prospective, and meant that the plaintiff would *hereafter* steal, or that he had already committed theft ; and though perhaps he may have laid too much stress on the word *will,* yet it was substantially a submission how they would understand the words, generally, as proved on the part of the plaintiff. It is objected that the Judge took no express notice of any other words than those proved by the witnesses P. T. & C. B. and particularly that he paid no attention to the admission which the defendant made to J. F. This would doubtless have been proper as showing an intention to charge the plaintiff with the crime of larceny, but the plaintiff's counsel should have called the Judge's attention to this testimony. Not having done so, he has no right to complain of the omission as erroneous. Nor is a mandamus the proper remedy. If the charge of the Judge was incorrect, the plaintiff should have taken his bill of exceptions, and reviewed it upon a writ of error. But aside from this difficulty as to the remedy, it is a sufficient answer to this application that the words proved would admit of some doubt as to their meaning, and where there is room for the least criticism upon their import, it is properly a question for the jury, whose decision is conclusive. It comes within the principle laid down by this Court in *Wilson* v. *Supervisors of Albany,* (12 John. 416.) We think the jury found against the weight of evi-

dence, but they had a right to decide.   Slander is in the nature of a penal action, in which though the jury find for the defendant against the weight of evidence, a new trial is never granted.   (*Hurtin* v. *Hopkins*, 9 John. 36.)

As to the remedy by mandamus, it may be proper to remark, that though in extreme cases we might interfere, and control the Court below upon questions of fact presented in the form of a motion for a new trial, yet it is a remedy which should be used very sparingly.   A contrary course would draw before this Court, whenever one of the parties should be dissatified with the decision of the Common Pleas, an examination of those questions which address themselves merely to the discretion of that Court.   We should be perpetually appealed to for the adjustment of rights undefined by law.   This would result in an endless conflict of opinion upon questions which must from their very nature be finally determined by the Court below, because they cannot be reached by the rules of law; and although we may think the inferior jurisdiction has erred, yet we will not interfere. It is true, that extreme cases may be supposed, which would form an exception to this doctrine.   Where an action is brought on a promissory note, the execution of which is proved beyond all doubt, and yet the jury find against it, should the Court below refuse a new trial, we might interfere; but it would be improper to do this, in ordinary cases.   Even where a verdict is plainly against law, yet the Court may many times properly deny a new trial; as if the controversy be very trifling in its nature, or contemptible in amount.

Motion denied.(*a*)

(*a*) Vid. *Macrow* v. *Hull*, 1 Burr. 11 ; *Farewell* v. *Chaffey*, id. 54, and the cases there cited ; *Fleming* v. *Gilbert*, 3 John. 528 ; *Hyatt* v. *Wood*, id. 239 ; *Hunt* v. *Burrell*, 5 John. 137 ; *Van Slyck* v. *Hogeboom*, 6 John. 270; and *Feeter* v. *Whipple*, 8 John. 369.